# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0529V

| | |
|---|---|
| KATHLEEN CROMWELL, | Chief Special Master Corcoran |
| Petitioner, | |
| v. | Filed: February 4, 2025 |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | |
| Respondent. | |

*Paul R. Brazil*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEY'S FEES AND COSTS[1]

On January 11, 2021, Kathleen Cromwell filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that after her receipt of an influenza ("flu") vaccine on November 4, 2019, she suffered a shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, lasting over six months. Petition (ECF No. 1).

After voluntarily dismissing the claim, Petitioner moved for an award of attorneys' fees and costs. However, for the reasons set forth below, I find that Petitioner has failed to establish there was a reasonable basis for the claim. Thus, the fees motion is denied.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

## I. Procedural History

In January 2021, Petitioner initiated the claim with a "bare bones" petition, accompanied only by declarations. Exs. 1 – 2. She was granted several opportunities to furnish supporting documentation, which was filed as Exs. 3- 15; *see also* Amended Petition filed May 25, 2022 (ECF No. 22) (containing more detailed allegations and citations).

On August 29, 2023, Respondent filed his Rule 4(c) Report opposing compensation – disputing 1) severity and 2) onset of the alleged injury particularly in light of Petitioner's subsequent receipt of a separate non-covered vaccine. Rule 4(c) Report (ECF No. 31). Following my own review of the evidence, I ordered Petitioner to show cause why her claim should not be dismissed for insufficient proof specifically of those identified issues. Order to Show Cause entered Nov. 27, 2023 (ECF No. 32).

In response on February 28, 2024, Petitioner filed a motion requesting a decision dismissing the petition – conceding her inability to prove her case, and that pursuing it further would be unreasonable. ECF No. 36. The motion was granted and the case was dismissed that same day. ECF No. 38. Judgment entered on March 1, 2024. ECF No. 39.

On May 8, 2024, Petitioner filed a motion requesting $13,923.10 (representing $13,284.60 in attorneys' fees, and $638.50 for attorneys' costs). ECF No. 42 at 2. However, the application does not address the statutory requirements of good faith and reasonable basis – prerequisites for any attorney's fees and costs award in unsuccessful cases. *See* Section 15(e)(1). On May 22, 2024, Respondent opposed any award of attorneys' fees and costs on the grounds that Petitioner had failed to establish the reasonable basis requirement. ECF No. 43 at 1, 10 – 12. Petitioner has not filed a reply. The matter is ripe for adjudication.

## II. Applicable Legal Standards

Motivated by a desire to ensure that petitioners have adequate assistance from counsel when pursuing their claims, Congress determined that attorney's fees and costs may be awarded even in unsuccessful claims. H.R. REP. NO. 99-908, at 22 *reprinted in* 1986 U.S.C.C.A.N. 6344, 6363; *see also Sebelius v. Cloer*, 133 S.Ct. 1886, 1895 (2013) (discussing this goal when determining that attorneys' fees and costs may be awarded even when the petition was untimely filed). This is consistent with the fact that "the Vaccine Program employs a liberal fee-shifting scheme." *Davis v. Sec'y of Health & Hum. Servs.*, 105 Fed. Cl. 627, 634 (2012). Indeed, it may be the only federal fee-shifting statute that permits *unsuccessful* litigants to recover fees and costs.

2

However, Congress did not intend that *every* losing petition be automatically entitled to attorney's fees. *Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). And there is also a prerequisite to even obtaining fees in an unsuccessful case. The special master or court may award attorney's fees and costs to an unsuccessful claimant only if "the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Section 15(e)(1). Reasonable basis is a prerequisite to a fee award for unsuccessful cases – but establishing it does not automatically *require* an award, as special masters are still empowered by the Act to deny or limit fees. *James-Cornelius on behalf of E. J. v. Sec'y of Health & Hum. Servs.*, 984 F.3d 1374, 1379 (Fed. Cir. 2021) ("even when these two requirements are satisfied, a special master retains discretion to grant or deny attorneys' fees").

As the Federal Circuit has explained, whether a discretionary fees award is appropriate involves two distinct inquiries, but only reasonable basis is at issue herein.[3] Reasonable basis is deemed "an objective test, satisfied through objective evidence." *Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344 (Fed. Cir. 2020) ("Cottingham I"). "The reasonable basis requirement examines "not at the likelihood of success [of a claim] but more to the feasibility of the claim." *Turner*, 2007 WL 4410030, at *6 (quoting *Di Roma v. Sec'y of Health & Hum. Servs.,* No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993)). The Federal Circuit recently explained "that a reasonable basis analysis is limited to objective evidence, and that subjective considerations, such as counsel's subjective views on the adequacy of a complaint, do not factor into a reasonable basis determination." *James-Cornelius*, 984 F.3d at 1379.

Although clearly easier to meet than the preponderant standard required for compensation, "courts have struggled with the nature and quantum of evidence necessary to establish a reasonable basis." *Wirtshafter v. Sec'y of Health & Hum. Servs.,* 155 Fed. Cl. 665, 671 (Fed. Cl. 2021). "[I]t is generally accepted that 'a petitioner must furnish some evidence in support of the claim.'" *Id.* Citing the *prima facie* elements of a successful claim described in Section 11(c)(1), the Federal Circuit recently instructed that the level of the objective evidence sufficient for a special master to find reasonable basis should be "more than a mere scintilla but less than a preponderance of proof." *Cottingham I*, 971 F.3d at 1345-46. "This formulation does not appear to define reasonable basis so much as set its outer bounds." *Cottingham v. Sec'y of Health & Hum. Servs.,* 159 Fed. Cl. 328, 333, (Fed. Cl. 2022) *("Cottingham II")*, *aff'd without op.*, 2023 WL 754047 (Fed.

---

[3] Claimants must also establish that the petition was brought in good faith. *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 635 (Fed. Cir. 2017) (quoting *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 289 (2014)). "[T]he 'good faith' requirement . . . focuses upon whether petitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-0544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). But good faith is not disputed herein, and I do not ascertain evidence in the record calling it into question.

Cir. Nov. 14, 2023). "[T]he Federal Circuit's statement that a special master 'could' find reasonable basis based upon more than a mere scintilla does not mandate such a finding." *Cottingham II*, 159 Fed. Cl. at 333 (citing *Cottingham I*, 971 F.3d at 1346).

Furthermore, the issue of reasonable basis is not a static inquiry. Reasonable basis for a claim at the time of filing may cease to exist as further evidence is presented. *Perreira*, 33 F.3d at 1377. In *Perreira,* the Federal Circuit affirmed a special master's determination that reasonable basis was lost after Petitioner's "expert opinion, which formed the basis of the claim, was found to be unsupported by either medical literature or studies." *Id.* at 1376.

At issue here, Vaccine Act Section 11(c)(1)(D)(i) requires the establishment of an injury and residual effects lasting for over six months after the date of vaccination. This is a threshold requirement for entitlement. *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a *prima facie* case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

### III.   Analysis

The submitted evidence reflects that Petitioner received the at-issue flu vaccine in her left arm, at a pharmacy in Mississippi, on November 4, 2019. Ex. 3 at 2 – 4. A little more than a week later, Petitioner followed up with her primary care provider ("PCP") for unrelated concerns. Ex. 6 at 10. The records do not document any reports of an adverse reaction to the recent flu vaccine, or any other shoulder injury. Petitioner received a pneumococcal polysaccharide ("PPSV13") vaccine in the same left arm. *Id.* at 12.[4]

The following month, at a December 16, 2019 PCP encounter, Petitioner reported a "one-week" history of left shoulder pain. Ex. 6 at 7. She was diagnosed with rotator cuff tendinitis, and referred to physical therapy" ("PT"). *Id.*

At the January 14, 2020, PT initial evaluation, Petitioner rated her pain at 8/10, and displayed decreased range of motion ("ROM") and muscle atrophy. Ex. 15 at 51. She accepted the therapist's recommendation of 2 – 3 formal sessions per week for 8 weeks (e.g., until March 2020). *Id.* at 54. The subsequent records reflect "good" to "excellent" progress with her shoulder – including a decreased pain rating of 3/10, increased ROM,

---

[4] The Program does not cover pneumococcal polysaccharide vaccines of this kind – although it does cover pneumococcal *conjugate* vaccines. 42 C.F.R. § 100.3(a).

and increased strength – and moreover, Petitioner's focus shifted to unrelated knee and back pain. *Id.* at 4 – 50. By March 5, 2020 (her 19th PT session), she had agreed to discharge from formal PT. The discharge summary references a home exercise program ("HEP") – but the physical exam reflects that Petitioner had mild, if any, ongoing deficits; she had met all goals; and her pain rating was 0/10. *Id.* at 1 – 6. The PT records do not otherwise indicate that the discharge decision was influenced by the emerging Pandemic – instead, the PT records support that the injury was substantially, if not completely, resolved by *four months post-vaccination*.

The PT discharge was followed by a six-month treatment gap, during which Petitioner moved to Wisconsin. On September 29, 2020, upon establishing care with a new PCP, Petitioner discussed concerns including "left shoulder pain, which has been chronic… exacerbated when she is moving it and lifting heavy things… denies any trauma to this area. She had been told that this was arthritis." Ex. 4 at 7.

At the October 26, 2020, orthopedic initial evaluation, Petitioner reported left shoulder pain that began "after receiving [a] flu shot this year,"[5] and a "*recurrence* of shoulder pain currently." Ex 7 at 10 (emphasis added) An MRI was remarkable only for "mild shoulder arthritis with a small inferior osteophyte at the interior aspect of the humeral head." *Id.* at 11. The orthopedist assessed, and ordered PT, for both chronic shoulder pain and cervical spine degenerative disc disease. *Id.* Subsequent PCP and orthopedics records are consistent in documenting both shoulder and neck pain. *See e.g.*, Ex. 4 at 41; Ex. 7 at 6, 8; Ex. 8 at 9, 11. Petitioner ultimately underwent a left shoulder arthroscopy on April 23, 2021, and attended ten post-surgical PT sessions through June 20, 2021. Ex. 8 at 14 – 15; *see generally* Ex. 10.

I have also considered the recollections from Petitioner and two of her neighbors in Mississippi.[6] But they do not acknowledge the intervening, non-covered pneumococcal polysaccharide vaccine, which both complicates Petitioner's allegation of shoulder pain onset within 48 hours of the flu vaccine, and represents a potential alternative cause for the shoulder injury documented in late 2020 – early 2021.

---

[5] As noted above, the vaccine was actually received nearly twelve months earlier – in the *previous* year, 2019.

[6] Of note, Petitioner submitted unnotarized, unsworn statements. Exs. 1, 14. The witnesses' statements are sworn under penalty of perjury in accordance with 28 U.S.C.A. § 1746. Exs. 12 – 13.

5

Neither do Petitioner and the other witnesses address the PT records which support a conclusion that any post-vaccination shoulder injury resolved within four months post-vaccination, that is, by March 2020. The first witness recalls performing most of the packing for Petitioner, who could not use her shoulder, and Petitioner's husband who was very ill, at some *unspecified* time. Ex. 12 at ¶ 6. The second witness "moved back to Kentucky in early 2020," and thus would not have personally witnessed Petitioner's shoulder during the most relevant time. Ex. 13 at ¶ 2.

In short, the most contemporaneous medical records support the conclusion that Ms. Cromwell's shoulder injury began after a left-sided administration of a non-covered pneumococcal polysaccharide vaccine, rather than the earlier flu vaccine. The same records reflect that any post-vaccine shoulder injury – which was formally documented as tendonitis – resolved within less than six months. Subsequent records support an unrelated "recurrence" of shoulder pain, as well as neck pain, with other possible explanations – arthritis and cervical spine pathology. Thus, from the outset, the claim lacked an objective basis for a flu-SIRVA claim, and fees are properly denied.

. All of these foundational deficiencies existed months before the Petition was filed – and thus could have been ascertained by counsel. This is not a case in which the development of a fact, out of ambiguous records, *later* revealed that a claim that initially appeared viable in fact was not. Accordingly, counsel properly bears the risk of filing an objectively-unsupported claim.

## Conclusion

The Vaccine Act permits an award of reasonable attorneys' fees and costs to an unsuccessful litigant who manages to establish good faith and a reasonable basis for the Petition. Section 15(e)(1). But reasonable basis has not been established here. Therefore, **Petitioner's motion for attorney's fees and costs is DENIED.**

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[7]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master

---

[7] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.